Shaw, C. J.
This is in the nature of a bill of interpleader. A question having arisen between certain sets of legatees under the will of the late Mr. John Bromfield, in relation to the trde intent of the testator, with regard to the residue of the estate, which residue amounts to about $60,000, the executor has brought all the parties before the court, in order to the judicial decision of the questions at issue. This residue was given by the will to nine persons, including three, whom the rest allege to have been afterwards excluded by the terms of a codicil. The three deny that they are so excluded, and this is the point at issue. This depends so exclusively upon three clauses of the will and codicil, that it is necessary they should be stated.
The first provision in the will, for the three cousins, Mrs. Blanchard, the two brothers, Edward A. Pearson and Henry B. Pearson, is of the following tenor: —
“ If my cousin, Edward A. Pearson, shall survive me, he shall be paid two thousand dollars; and the like sum shall be paid to my cousin, Henry B. Pearson; and, if he shall not survive me, his issue shall take said sum.
“ I give to my cousin, Mrs. Blanchard, relict of the late Rev. *293 Mr. Blanchard, two thousand dollars, which sum shall go to her issue, in case she shall not survive me.”
In this clause, there is a difference in the terms of the legacies. The legacy to Edward A. Pearson was on the express condition that he should personally survive the testator; and, therefore, though he might marry and have issue and die, his surviving issue would not take. The case finds that Mr. Edward A. Pearson then was, and still is, a bachelor; making it less probable that he would die leaving issue. This legacy therefore would lapse, in case of his death before the testator. But, in case of the other two, the provision is that, if either should die leaving issue, the issue should take the legacy which the deceased parent would have taken.
The other clause in the original will, which is of importance to the question before us, is this : —
“ All the residue of my estate, real, personal, and mixed, I give and devise unto John Rogers, son of the late Daniel S. Rogers, Esq., Margaret B. Blanchard, Edward A. Pearson, Henry B. Pearson, children of the late Eliphalet Pearson, Eliza S. Quincy, Maria S. Quincy, Margaret M. Quincy, (now Greene,) Anna C. L. Quincy, (now Waterston,) and Abigail P. Quincy, daughters of said Josiah Quincy, senior, and to their heirs and assigns forever. If said John Rogers shall die in my lifetime, his issue shall take his share of said residue; but, in case any of the other residuary legatees shall not survive me, his or her share shall go to the survivors.”
None of these persons died in the lifetime of the testator. The will was dated May 31,1849, and the codicil on the 6th of June, six days after the date of the will. The testator died about the 9th of December, in the same year, and the will was admitted to probate on the 14th of January, 1850.
The will, in addition to the clauses cited, contains a variety of other provisions; among them, a large provision is made for the sister of the testator, Mrs. Tracy. It is further directed, that the legacies shall be paid within six months after the death of the testator; or that, if not paid, interest shall be paid upon them after the expiration of that period. Mr. Quincy is nominated as executor of the will, and certain *294 trastees are also named for specified purposes, of whom no bonds are to be required.
The codicil above referred to, then follows. It is in these words:—
“ Upon a reperusal of the preceding will, I find that my intention, in respect to the legacies thereby given to Mrs. Blanchard, and her two brothers, Messrs. Edward A. Pearson, and Henry B. Pearson, is not carried into effect.
“ I, therefore, in this particular, declare my will to be, that the sum of six thousand dollars shall be taken by Mrs. Blanchard and her brothers, or those of them who shall survive me, they to share alike; but if all these persons shall die in my lifetime, then the said sum shall sink into the residue of my estate.
“ I declare this provision for said legatees to be in lieu of, and as a substitute for, that made in their behalf by the afore-written will, and this writing shall be taken as a codicil thereto, hereby ratifying said will in all other particulars.”
The question then is, as to the effect of these words: “1 declare this provision for said legatees to be in lieu of, and as a substitute for, that made in their behalf by the aforewrit-ten will.”
The six other legatees contend that’“that” means all the provision made in the will for these three legatees, including their shares in the residue. On the other side, it is contended that it applies only to the specific provision, relating to the three particular legacies of two thousand dollars, amounting in the whole to six thousand dollars, given to Mrs. Blanchard and her two brothers ; that the codicil was only intended to correct the error in that clause, and that it left the residuary bequest untouched.
The leading rule in the interpretation of wills is, to ascertain, if possible, the intent of the testator. This is said, in the figurative language of some of the cases, to be the polestar which should guide the court in its decision. We must ascertain what is the intention, the purpose, or will of the testator. It may be said of all written instruments, and it is in some sense true, that they are to be construed with reference *295 to the intention of the parties to them. But in a testament there is only one party; in other written instruments, generally two or more. In construing a contract, the will of all the parties to it is to be sought, and, when discovered, constitutes the contract. But in wills, the intent of the testator alone is to be looked for, and, when discovered, it governs; because it is his intention, manifested in his words, which makes it his last will and testament.
There are various modes to be resorted to, in order to ascertain the meaning and intent of the testator, in any particular provision: 1, By a careful consideration of the particular provision as expressed, especially noting whether the will is carefully drawn by a person of skill, or whether by a person manifestly illiterate; 2, by considering the general scope and tenor of the will, taken as a whole; 3, by taking every clause and item, in whatever part of the instrument they may be found, which may have any bearing on each other, however remote they may be from each other. An intent declared in the preamble of a will, for instance, “ desirous of disposing of all my estate,” may have the effect to construe a doubtful devise in the clause to carry a fee, which would otherwise carry an estate for life only, and leave a remainder; 4, by taking into consideration all the circumstances and relations in which the testator was placed ; 5, where there is a codicil, they are to be construed in reference to each other, to determine, from change of circumstances or otherwise, what it is intended to alter, and what to retain and confirm; 6, the codicil shall change the will so far only as the intent is manifest, especially where, in all other respects, the will is in terms ratified and confirmed.
There are no very direct authorities. There is one recent case, which may have some bearing upon the present; Hearle v. Hicks, 8 Bing. 475, decided by the house of lords. The general position there maintained was, that where the terms of the will were clear to give an estate, the words of a codicil must manifest an intent equally clear to revoke it. Though, if the codicil stood alone, its language might seem to require one construction, yet, if the effect of such construction is to *296 revoke a clear grant made by the will, the court will not give it that construction, unless the words of revocation by the codicil are equally clear with the language of the grant in the. will.
We will now turn to a more careful examination of this codicil, to see what it was apparently the testator’s intention to do, and what, in legal effect, he has done. It was made so soon after the will, that he had only time to make a deliberate examination. Having done this, he discovers that the will, as written, does not carry out his intention. In consequence of which, and in order to carry out his original intention, he proceeds to make an alteration in this particular. From the alteration in fact made, we learn what was his original intent a determination expressed to make an alteration in one particular, negatives, by implication, any intention to alter it in any other respect. He then says, I declare my will to be, that the sum of six thousand dollars shall be taken by Mrs. Blanchard and her said brothers, or those of them who shall survive me, they to share alike. But if all three persons shall die in my lifetime, then said sum shall sink into the residue of my estate. It seems to us that the meaning of this is quite obvious. He wishes to consider this family, of a sister and two brothers, as a class ; his intention was, and is now declared to be, that, instead of three such legacies of $2,000, they shall take the $6,000 as a class; and if all, or two, or either one-live to take it, they shall take and enjoy the wholewhereas, by the wall as it stood, if either died in the lifetime of the testator, the legacy of that one would lapse into the residue of the testator’s estate, without right of survivorship, between the brothers and sister.
He then proceeds, in the codicil, to declare this provision for said legatees to be in lieu of, and as a substitute for, that made in their behalf by the aforewritten will. It would be strange, if no intent to change the general distribution had intervened, to suppose that $6,000 to them, with survivorship, was intended as a substitute for $6,000 in their separate legacies, and also the ninth part of an uncertain residuum, which might be a large one. It was necessary that some substitu *297 tion should be declared; otherwise, it might have been claimed to be $6,000, in addition to the three legacies of $2,000 in the will. De Witt v. Yates, 10 Johns. 156.
It turns upon the use of the word “provision.” He certainly might have expressed his intention more clearly by saying, in lieu of the three legacies; but, from the context and subject-matter, we think that was his intent.
Another consideration, which leads to the same conclusion. In using a questionable word, where the question is in what sense he used it, we are to consider what it was his declared intention to do. Here the declared intention was, to set the will right in one particular, when he had discovered, on a reperusal, that his intention had not been expressed. To ascertain what error he intended to correct, we may first inquire, what error or mistake he had discovered. This he does state; “ on a reperusal, &c., I find my intention in respect to the legacies thereby given to Mrs. Blanchard and her two brothers, Messrs. Edward A. Pearson and Henry B. Pearson, is not carried into effect.” He perceives no mistake in finding their names as residuary legatees. The mistake is in regard to the legacies given. Now, in common parlance, as well as in a more precise use of language, a “ legacy ” is distinguishable from the gift of a residue, or share in a residue.
It was the manner in which the gift of the legacies was expressed in the will, with which alone he expressed himself dissatisfied; and it was that, and that alone, which he intended to set right in the codicil.
The court are, therefore, of opinion, that the codicil did not revoke the residuary gift to Mrs. Blanchard and the two Fear-sons, and that they are entitled to their shares therein.

Decree accordingly.